# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA
# NEW ORLEANS DIVISION

| | |
|---|---|
| STEPHEN STARR, Individually and for Others Similarly Situated, | Case No. |
| Plaintiff, | Magistrate: |
| | Judge: |
| v. | Jury Trial Demanded |
| PIPELINE SAFETY, LLC | Class and Collective Action |
| Defendant. | |

## ORIGINAL COMPLAINT

### SUMMARY

1.      Stephen Starr (Starr) brings this class and collective action to recover the unpaid overtime wages and other damages owed to him by Pipeline Safety, LLC (Pipeline Safety) under the Fair Labor Standards Act (FLSA) and the New Mexico Minimum Wage Act, NMSA §50-4-19, *et seq.* (NMMWA).

2.      Starr and the other Pipeline Safety inspectors regularly work more than 40 hours in a week.

3.      But Pipeline Safety does not pay the inspectors overtime for hours worked in excess of 40 hours in a single workweek.

4.      Instead of paying overtime, Starr and the other inspectors received a daily rate with no overtime compensation.

5.      The day rate paid by Pipeline Safety did not compensate Starr and the other inspectors on a salary basis.

6.      This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these inspectors.

## JURISDICTION AND VENUE

7.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8.      The Court has supplemental jurisdiction over the NMMWA claims pursuant to 28 U.S.C. § 1367 because they arise from the same common nucleus of operative facts as the FLSA claims asserted.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

10.     Pipeline Safety is headquartered in Gray, Louisiana, in this District and Division.

## THE PARTIES

11.     Starr worked for Pipeline Safety from October 2018 until January 2021.

12.     Starr was a welding inspector and a quality inspector for Pipeline Safety.

13.     Starr worked for Pipeline Safety in New Mexico and Texas.

14.     Throughout his employment with Pipeline Safety, Starr was paid a day-rate with no overtime compensation.

15.     Starr's day rate was less than the required $455 or $684 salary requirement.

16.     Starr's consent to be a party plaintiff is attached as Exhibit A.

17.     Starr brings this action on behalf of himself and all other similarly situated inspectors who were paid by Pipeline Safety's day-rate scheme.

18.     Each of these inspectors were paid a flat amount for each day worked and Pipeline Safety failed to pay them overtime for hours worked in excess of 40 hours in a workweek in accordance with the FLSA and NMMWA.

19.     Starr seeks to represent a 2 classes of similarly situated inspectors under the FLSA and NMMWA pursuant to Federal Rule of Civil Procedure 23.

20.     The FLSA Class is defined as:

**All inspectors of Pipeline Safety who were paid a day-rate with no overtime in the past 3 years (FLSA Class Members).**

21.     The NMMWA Class is defined as:

**All inspectors of Pipeline Safety working in New Mexico who were paid a day-rate with no overtime in the past 3 years (New Mexico Class Members).**

22.     The FLSA Class Members and New Mexico Class Members shall be referred to as the Putative Class Members.

23.     The Putative Class Members are easily ascertainable from Pipeline Safety's business records.

24.     Pipeline Safety may be served by serving their registered agent for service of process, Mary Riviere, 423 Good St., Houma, Louisiana 70360, or wherever she may be found.

### COVERAGE UNDER THE FLSA

25.     At all times hereinafter mentioned, Pipeline Safety has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

26.     At all times hereinafter mentioned, Pipeline Safety has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

27.     At all times hereinafter mentioned, Pipeline Safety has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as oilfield equipment, hand tools, computers, automobiles, and cell phones - by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

3

28.     At all times hereinafter mentioned, Starr and the FLSA Class Members were engaged in commerce or in the production of goods for commerce.

**FACTS**

29.     Pipeline Safety provides inspection services  and data collection to the energy industry, including pipelines and gas plants among others.

30.     To provide its services, Pipeline Safety hires inspectors (like Starr) to perform inspection work.

31.     Many of these inspectors worked for Pipeline Safety on a day-rate basis and make up the proposed Putative Class.

32.     These inspectors perform similar job duties and are subjected to the same or similar illegal pay practices for similar work.

33.     Because of Pipeline Safety's day-rate pay practice, Starr and the Putative Class Members are paid a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

34.     Because of Pipeline Safety's day-rate pay practice Starr and the Putative Class Members failed to receive overtime pay for hours that they worked in excess of 40 hours in a workweek.

35.     For example, throughout Starr's employment with Pipeline Safety, he was paid on a day-rate basis.

36.     Starr and the Putative Class Members normally worked 10 to 12 or more hours a day.

37.     Starr and the Putative Class Members would regularly work 6 to 7 days a week.

38.     Pipeline Safety never guaranteed Starr and the Putative Class Members a salary.

39.     Pipeline Safety never paid Starr or the Putative Class Members on a salary basis.

40.     Starr was required to report the days worked to Pipeline Safety.

41.     Starr was staffed by Pipeline Safety to Plains All American, Energy Transfer, and Kinder Morgan.

42.     Starr worked for Pipeline Safety in Texas and New Mexico.

43.     The work Starr performed was an essential and integral part of Pipeline Safety's core business.

44.     Very little skill, training, or initiative was required of Starr to perform his inspection duties.

45.     Starr and the Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

46.     Moreover, the job functions of Starr and the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

47.     Starr and the Putative Class Members did not have any supervisory or management duties and to the extent that they did, they performed those duties on Pipeline Safety's behalf.

48.     For the purposes of an FLSA and NMMWA overtime claims, the Putative Class Members performed substantially similar job duties related to inspection services of pipelines.

49.     Starr performed routine duties that were largely dictated by Pipeline Safety and its clients.

50.     Pipeline Safety determined Starr and the Putative Class Members' rates of pay.

51.     The Putative Class Members worked hours similar to Starr's.

52.     Starr and the Putative Class Members were W-2 employees of Pipeline Safety.

53.     Pipeline Safety directly paid Starr and the Putative Class Members.

54.     The Putative Class Members all performed inspection services for Pipeline Safety.

55.    The Putative Class Members were denied overtime by the same illegal pay practice (Pipeline Safety's day-rate pay scheme) that resulted in Starr being denied overtime wages.

56.    Pipeline Safety's policy of failing to pay its employees, including Starr, overtime violates the FLSA and NMMWA because these inspectors are non-exempt.

57.    Pipeline Safety's day-rate scheme violates the FLSA and NMMWA because Starr and the Putative Class Members did not receive any overtime pay for hours worked over 40 hours each week.

58.    The Putative Class members all worked similar hours and were denied overtime as a result of the same illegal day rate pay plan.

59.    The Putative Class Members regularly worked in excess of 40 hours in a workweek.

60.    Pipeline Safety knew Starr and the Putative Class Members regularly worked more than 40 hours in a week.

61.    Instead of paying the Putative Class Members overtime, they were only paid a flat daily rate for all hours worked, including those in excess of 40 in a workweek.

62.    As a result, Pipeline Safety failed to pay the Putative Class Members proper overtime compensation for hours worked in excess of 40 in a workweek.

63.    Pipeline Safety knew, or showed reckless disregard for, whether the Putative Class Members were entitled to overtime under the FLSA or NMMWA.

64.    Pipeline Safety has been sued for this same day rate pay practice before.

65.    Nonetheless, Starr and the Putative Class Members were not paid overtime for while working for Pipeline Safety.

66.    Pipeline Safety was aware of the requirements of the FLSA and NMMWA.

67.    Pipeline Safety did not investigate the legality of its classification of Starr and the Putative Class Members as exempt from overtime pay.

68.    Pipeline Safety did not review the job descriptions of Starr and the Putative Class Members.

69.    Pipeline Safety did not conduct any time studies of the exempt and non-exempt job duties performed by Starr and the Putative Class Members.

70.    Pipeline Safety did not investigate the legality of its day rate pay practice and whether it constitutes compensation on a salary basis.

71.    Pipeline Safety was aware of Starr's and the Putative Class Members' hours worked.

72.    Pipeline Safety was aware Starr and the Putative Class Members worked in excess of 40 hours in a workweek.

73.    Pipeline Safety recklessly disregarded its FLSA and NMMWA obligations by employing Starr and the Putative Class Members on a day rate basis.

74.    Pipeline Safety willfully violated the FLSA.

## FLSA VIOLATIONS

75.    Starr incorporates the preceding paragraphs by reference.

76.    As set forth herein, Pipeline Safety has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess 40 hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

77.    Pipeline Safety knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the FLSA Class Members overtime compensation.

78.    Pipeline Safety's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

79.    Pipeline Safety knew that a day-rate did not constitute a guaranteed salary.

80.     Accordingly, Starr and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## NMMWA VIOLATIONS

81.     Starr incorporates the preceding paragraphs by reference.

82.     Starr brings this claim under the NMMWA as a Rule 23 class action.

83.     The conduct alleged violates the NMMWA (NMSA § 50-4-22).

84.     At all relevant times, Pipeline Safety was subject to the requirements of the NMMWA.

85.     At all relevant times, Pipeline Safety employed Starr and each member of the New Mexico Class as an "employee" within the meaning of the NMMWA.

86.     The NMMWA required Pipeline Safety to pay its employees at 1 and ½ times the regular rate of pay for hours worked in excess of 40 hours in any one week.

87.     Starr and each member of the New Mexico Class are entitled to overtime pay under the NMMWA.

88.     Pipeline Safety had a policy and practice of failing to pay these New Mexico Class Members overtime for hours worked in excess of 40 hours per workweek.

89.     Starr and each member of the New Mexico Class seek unpaid overtime in amount equal to 1 and ½ times their regular rates of pay for hours worked in excess of 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

90.     Starr and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Pipeline Safety, as provided by the NMMWA.

91.     The improper pay practices at issue were part of a continuing course of conduct, entitling Starr and New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

92.     Starr incorporates all previous paragraphs and alleges that the illegal pay practices Pipeline Safety imposed on Starr were likewise imposed on the Putative Class Members.

93.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and NMMWA.

94.     Numerous other individuals who worked with Starr indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the FLSA and NMMWA.

95.     Based on his experiences and tenure with Pipeline Safety, Starr is aware that Pipeline Safety's illegal practices were imposed on the Putative Class Members.

96.     The Putative Class Members were all not afforded the overtime compensation when they worked in excess of 40 hours per week.

97.     Pipeline Safety's failure to pay wages and overtime compensation at the rates required by law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

98.     Starr's experiences are therefore typical of the experiences of the Putative Class Members.

99.     The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

100.     Starr has no interests contrary to, or in conflict with, the Putative Class Members.

101.    Like each Putative Class Member, Starr has an interest in obtaining the unpaid overtime wages owed to him under the FLSA and NMMWA.

102.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

103.    Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Pipeline Safety will reap the unjust benefits of violating the FLSA and NMMWA.

104.    Furthermore, even if some of the Putative Class Members could afford individual litigation against Pipeline Safety, it would be unduly burdensome to the judicial system.

105.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and collective and provide for judicial consistency.

106.    The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a.    Whether Pipeline Safety employed the Putative Class Members within the meaning of the FLSA and NMMWA;

    b.    Whether Pipeline Safety's day rate pay scheme meets the salary-basis test;

    c.    Whether Pipeline Safety's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

    d.    Whether Pipeline Safety's violation of the FLSA and NMMWA was willful; and

    e.    Whether Pipeline Safety's illegal pay practices were applied uniformly to all Putative Class Members.

107. Starr's claims are typical of the claims of the Putative Class Members. Starr and the Putative Class Members sustained damages arising out of Pipeline Safety's illegal and uniform classification and compensation policy.

108. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

109. Therefore, this issue does not preclude class or collective action treatment.

**JURY DEMAND**

110. Starr demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Starr prays for judgment against Pipeline Safety as follows:

a.    An Order certifying the class action under Federal Rule of Civil Procedure 23;

b.    An Order appointing Starr as class representative and Starr's Counsel as class counsel;

c.    For an Order granting Court Ordered Notice be distributed to the FLSA Class Members;

d.    For an Order pursuant to FLSA and NMMWA finding Pipeline Safety liable for unpaid back wages due to Starr and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

e.    For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

f.    For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Philip Bohrer*
    Phillip Bohrer (#14089)
    phil@bohrerbrady.com
    Scott E. Brady (#24976)
    scott@bohrerbrady.com
    **BOHRER BRADY, LLC**
    8712 Jefferson Highway, Suite B
    Baton Rouge, Louisiana 70809
    Telephone: (225) 925-5297
    Facsimile: (225) 231-7000

       AND

    **Michael A. Josephson**
    State Bar No. 24014780
    *(pending pro hac vice)*
    **Richard M. Schreiber**
    State Bar No. 24056278
    *(pending pro hac vice)*
    **Andrew W. Dunlap**
    State Bar No. 24078444
    *(pending pro hac vice)*
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    rschreiber@mybackwages.com
    adunlap@mybackwages.com

       AND

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    *(pending pro hac vice)*
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**